**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STACIE LEE CONWAY, | ) | CASE NO. 1:18-cv-00218 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Stacie Lee Conway (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On December 10, 2014, Plaintiff filed her applications for POD and DIB, alleging a disability onset date of November 14, 2014. (Transcript ("Tr.") 169). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 128-168). Plaintiff participated in the hearing on December 14, 2016,

was represented by counsel, and testified. (Tr. 58-93). A vocational expert ("VE") also participated and testified. *Id*. On April 6, 2017, the ALJ found Plaintiff not disabled. (Tr. 52). On December 7, 2017 the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On January 29, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 15).

Plaintiff asserts the following assignment of error: the ALJ improperly disregarded the opinion of a nurse practitioner. (R. 13, PageID# 608-610).

## II. Relevant Medical Evidence[1]

### A. Treatment Records

On June 16, 2015, Plaintiff was seen by nurse Ann Harrington, who noted Plaintiff had a history of "cerebellar ataxia, etoh alcohol related neuropathy, anxiety, depression." (Tr. 372). Plaintiff reported she had a four to five-year history of back pain. *Id*. Plaintiff stated that her pain was intermittent and varies from mild to severe in intensity, but she had not received injections or undergone surgery. (Tr. 373). She also reported tingling and numbness in her fingers. *Id*. A review of an earlier lumbar x-ray from April of 2015 showed "five typical appearing lumbar vertebrae. There is question of narrowing of the L5-S1 disc space, although evaluation is suboptimal due to projection. Normal spinal alignment is maintained without evidence of recent fracture, subluxation or destructive bone lesion. Hypertrophic degenerative arthrosis of the lower lumbar facets is seen. The bilateral sacroiliac joints are unremarkable." (Tr. 375).

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only the limited recitation cited by the parties in their briefs and also deemed relevant by the court to the assignment of error raised. Further, as neither the claimant's credibility nor the VE's testimony is at issue, the court foregoes any recitation of the hearing testimony.

On May 18, 2016, Daniel Malkamaki, M.D., noted "[m]ild ABP weakness on the left compared to the right. There's a positive reverse phalen's as well." (Tr. 513). His impression was "[l]eft more than right [Carpal Tunnel Syndrome] symptoms classically." *Id.*

On November 11, 2015, Plaintiff told nurse Sharon Roesner that she quit her job, because she could not handle the stress of her supervisory position. (Tr. 439). She was diagnosed with major depressive disorder (moderate) and generalized anxiety disorder. (Tr. 444). She was assigned a Global Assessment of Functioning ("GAF") score of 51-60 indicative of moderate symptoms.[2] (Tr. 445).

On December 11, 2015, Plaintiff was seen again by nurse Roesner. (Tr. 436- 438). On mental status examination, Plaintiff was adequately groomed, her behavior was cooperative but anxious, she was oriented x 3, her speech was spontaneous with normal rate and flow, her thought process was logical and organized, there was no evidence of paranoia or perceptual disturbance, her mood was depressed and anxious, her affect was "range full," she had sustained attention/concentration, her recent and remote memory were within normal limits, and her judgment and insight were fair. (Tr. 437). Nurse Roesner's impression was that Plaintiff was stabilizing though she noted Plaintiff was anxious and can be obsessive with her thoughts. *Id.*

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 51 and 60 indicates *moderate* symptoms or *moderate* difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *Id.* An update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

**B.   Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 7, 2015, Plaintiff was seen by Anderson Hu, D.O., for a disability examination. (Tr. 277-279). Plaintiff reported that work related stress, depression, and knee pain prevent her from working. (Tr. 277). She reported that she can sit for one hour, stand for five minutes, walk 100 yards, and lift five pounds. *Id*. (Tr. 277). On Musculoskeletal examination, Dr. Hu observed as follows:

> No joint swelling, erythema, effusion, or deformity. Tenderness to palpation on the anterior surface of both knees. Knees had full range of motion and muscle strenght [sic]. Slightly decreased range of motion in the hips bilaterally. Upper extremities had full range of motion and muscle strenght [sic]. The patient was able to lift, carry and handle light objects. Patient was able to squat and rise from that position with ease. Patient was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table. The patient was able to walk on heels and toes. Tandem walking was normal and patient could hop on one foot bilaterally. Patient could dress and undress adequately well and was cooperative during the examination.

(Tr. 278). Dr. Hu concluded that Plaintiff could dress/undress herself for all aspects of the exam without difficulty, that there is no evidence of muscular asymmetry nor atrophy and no acute joint findings, strength and range of motion were within normal limits bilaterally in the upper extremities, range of motion was slightly decreased in her hips bilaterally, and Plaintiff could sit, stand, and walk. *Id*. Dr. Hu opined that "[t]he patient does not have any substantial physical limitations. Her medical conditions seem well controlled on current medications and there are no acute symptoms that would suggest otherwise." *Id*. Nevertheless, Dr. Hu concluded that Plaintiff "is able to walk for 30 minutes, sit for more than an hour at a time, stand for 30 minutes, and lift 15 pounds." (Tr. 278).

On February 11, 2015, State Agency physician, Gary Hinzman, M.D., reviewed the

4

evidence of record and assessed Plaintiff's physical RFC.[3] (Tr. 103-105). Dr. Hinzman opined

that Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; could

stand/walk for about six hours per workday; could sit for about six hours per workday; could

occasionally climb ramps/stairs; could never climb ladders/ropes/scaffolds; could frequently

stoop and crawl; had no manipulative restrictions; and had to avoid concentrated exposure to

hazards (machinery, heights, etc.). (Tr. 103-105).

On May 25, 2015, certified nurse practitioner Melissa Seidowski completed a checklist

"Physical/Emotional Evaluation." (Tr. 364). Nurse Seidowski indicated that Plaintiff had

diagnoses for depression, anxiety, alcoholic cerebellar degeneration, and low back pain. *Id*. She

checked boxes indicating that Plaintiff had no restriction in her ability to balance and

reach/grasp, but mild restriction in her ability to climb, bend, transmit and receive information,

and crouch/crawl. *Id*. She further opined that Plaintiff had mild restriction in her ability to

perform prolonged standing, prolonged sitting, kneeling, movement in workplace, and could lift

5 pounds. (Tr. 364). With respect to mental limitations, nurse Seidowski opined that Plaintiff had

no restriction in her adaptive skills or in her abilities to engage in interpersonal interaction,

perform activities of daily living, establish and maintain relationships, or to use judgment. *Id*.

Further, nurse Seidowski indicated that Plaintiff had mild restriction with memory, stress

tolerance, cognition, and in her abilities to sustain concentration, organize, solve problems, and

transmitting/receiving information. *Id*. No explanation was offered for the assessed restrictions,

and the area of the form asking for "Further Recommendations/Explanations" was left blank.

---

[3] Dr. Hinzman had available to him Dr. Hu's assessment from a few days earlier and ascribed it "other weight," explaining that Dr. Hu "stated the clmt has no substantial phy limitations but also stated the clmt has limitations standing, sitting, walking for long periods of time and can not lift over 15lbs." (Tr. 103).

(Tr. 364).

On August 31, 2015, State Agency physician William Bolz, M.D., reviewed the evidence of record and offered a physical RFC assessment mirroring that of Dr. Hinzman above. (Tr. 118-120).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since November 14, 2014, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: hypertrophic degenerative arthrosis of the lower lumbar facets, osteoarthrosis, bilateral carpal tunnel syndrome, hyperlipidemia, obesity, depression, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can occasionally climb ramps/stairs, and should never climb ladders/ropes/scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. The claimant can frequently perform left and right handling and fingering. She should never have exposure to unprotected heights and moving mechanical parts and should never operate a motor vehicle. In addition, the claimant is limited to simple, routine, repetitive tasks that are not in a production rate pace, i.e., assembly line work. She is limited to simple work-related decisions in using her judgement and dealing with changes in the work setting. The claimant is limited to frequent interaction with supervisors, co-workers, and the public.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on March 25, 1964 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. § 404.1563).

8.   The claimant has a limited education and is able to communicate in English (20 C.F.R. § 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 43-52).

## V. Law and Analysis

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error - Weight Ascribed to Nurse Practitioner's Opinion**

In the sole assignment of error, Plaintiff asserts the ALJ erred by failing to ascribe appropriate weight to the opinion of nurse practitioner Seidowski. (R.13, PageID# 608-610).

Pursuant to the regulations in effect when the ALJ rendered the April 6, 2017 decision, nurse practitioners are not included among the five identified types of "acceptable medical sources," but are considered "other sources." *Compare* former 20 C.F.R. §§ 404.1513(a) & 416.913(a) with former 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1). While recent revisions to the regulations now include licensed advanced practice registered nurses among the list of "acceptable medical sources," the revisions are expressly *not* retroactive. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7) ("Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (**only with respect to claims filed (see § 416.325) on or *after* March 27, 2017**) (emphasis added)); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion from an "other source" such as a chiropractor). Plaintiff acknowledges that under the

rules in effect at the time of the decision, nurse practitioners were not considered "acceptable medical sources," but rather only as "other sources." (R. 13, PageID# 603).

Although nurse practitioners are not "acceptable medical sources" under the regulations for the purposes of the case at bar, Social Security Ruling ("SSR") 06-03p, notes that information from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:
>
>> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.
>
> SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).

Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to

an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.)

(emphasis added).

Here the ALJ clearly did not ignore nurse Seidowski's opinions, nor did the decision consider them in silence. The ALJ addressed nurse Seidowski's opinion as follows:

> Melissa Seidowski, CNP, opined that the claimant has mild limitations with her physical capabilities, can lift up to 5 pounds, and has no to mild mental health limitations (Exhibit 5F). This opinion is given little weight; physical examinations that found that the claimant had normal muscle strength and full range of motion in her joints supports greater exertional functioning. In addition, Ms. Seidowski is not an acceptable medical source, and she does not provide a detailed explanation for her opinion.

(Tr. 49-50).

Although the ALJ's explanation is not extensive, it is, nevertheless, sufficient under the applicable rulings and regulations. The ALJ adequately considered those factors deemed relevant, such as the complete lack of a "detailed explanation for her opinion." (Tr. 50). In addition, the ALJ explained that the opinion was contradicted by the medical records, which

showed that upon physical examination Plaintiff had normal muscle strength and a full range of motion in her joints. (Tr. 49).

Plaintiff further contends that nurse Seidowski's opinion is consistent with the opinion of a non-treating consultative examiner, Dr. Hu, who opined Plaintiff could lift 15 pounds—more weight than assessed by nurse Seidowski but less weight than the 20 pounds required for light exertional work. (R. 13, PageID# 609). Plaintiff further points out that the ALJ ascribed great weight to Dr. Hu's opinion. *Id*. Specifically, the ALJ stated as follows:

> Consultative examiner Anderson Hu, DO, opined that the [claimant] is able to walk for 30 minutes, sit for more than an hour at a time, stand for 30 minutes, and lift 15 pounds. Dr. Hu also noted that the claimant does not have any substantial physical limitations and that her medical conditions seem well controlled on current medications and (Exhibit 3F/2). This opinion is given great weight because it is consistent with the examination finding that the claimant had full muscle strength, was able to walk without difficulty, was able to squat, was able get on and off the examination table, and had mostly full range of motion in her joints.

(Tr. 49).

Defendant suggests that "Plaintiff appears to take issue with the fact that the ALJ afforded 'great weight' to Dr. Hu's opinion," but did not limit Plaintiff to 15 pounds of lifting in the RFC, and rather found she could lift up to 20 pounds. (R. 15, PageID# 621, n. 5). Defendant avers that Plaintiff points to no authority requiring an ALJ to adopt an opinion in its entirety if it is ascribed "great weight." *Id*.

While Plaintiff is correct that the ALJ did not incorporate a 15-pound lifting limitation into the RFC, it does not follow that the ALJ's explanation with respect to nurse Seidowski's opinion or Dr. Hu's opinion is procedurally inadequate, or that the ultimate RFC determination was not supported by substantial evidence. Similar arguments have been addressed and rejected by other courts. *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 275 (6th Cir. 2015) ("Even

12

where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013) (White, M.J.) ("The ALJ giving 'great weight' to [physician's] opinion did not require him to adopt the stated limitation related to [Plaintiff's] inability to operate hand and foot controlled devices more than occasionally."); *Newsome v. Astrue*, No.11-cv-1141, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) ("[T]he fact that [the ALJ] gave 'great weight' to Dr. Naseer's opinion does not mean that he was required to adopt it wholesale. The issue of RFC is reserved to the Commissioner; while the assessment of RFC must be based on evidence in the record, 'the final responsibility for deciding these issues is reserved to the Commissioner.'") (citations omitted). The ALJ's decision to give "great weight" to those portions of Dr. Hu's opinion that he found supported by the evidence did not require him to adopt every limitation assessed.

Finally, the ALJ's finding that the Plaintiff could lift up to 20 pounds, as required by light work, is supported by substantial evidence which the ALJ expressly references in the decision. In the RFC portion of the decision, the ALJ also gave great weight to the opinions of State Agency physicians Hinzman and Bolz, both of whom opined that Plaintiff could lift 20 pounds occasionally. (Tr. 49, 103, 118). State agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did

not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.") The RFC, consequently, was supported by substantial evidence.

Therefore, the court recommends finding Plaintiff's sole assignment of error to be without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/*David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: December 17, 2018

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

14